UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| CECIL BARBER, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 1:08-cv-294 |
| v. | ) | |
| | ) | Judge Mattice |
| CITY OF CHATTANOOGA, *et al.,* | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM AND ORDER

Presently before the Court is Defendants' Motion for Summary Judgment and to Dismiss [Court Doc. 25], filed on January 12, 2011. When Plaintiff did not respond, the Court issued an Order on February 24, 2011 that notified Plaintiff that if he failed to respond to Defendants' motion by March 10, 2011, the Court would construe it as unopposed and decide it without hearing from Plaintiff [Court Doc. 30]. In response to the order, Plaintiff filed his Response in Opposition to Motion to Dismiss [Court Doc. 31] ("Response"). Defendants filed a brief in reply [Court Doc. 33] ("Reply") on March 21, 2011.

On March 25, 2011, Plaintiff filed a "Memorandum of Law Response to Defendants 2nd Motion to Dismiss as a Matter of Law and for Summary Judgment" [Court Doc. 35]. As Defendants did not file a "second" motion to dismiss, but rather filed a reply to Plaintiff's own late-filed response, the Court construes this as a motion for leave to file a surreply pursuant to Eastern District of Tennessee Local Rule 7.1(d), which provides "No additional briefs, affidavits, or other papers in support of or in opposition to a motion shall be filed without prior approval of the Court, except that a party may file a supplemental brief of no more than 5 pages to call to the Court's attention developments occurring after a party's

final brief is filed." In this case, Plaintiff is not calling to the Court's attention to developments that occurred after Defendants' reply brief or to new arguments raised in Defendants' reply brief (there were none), but rather Plaintiff simply reiterates arguments made in his earlier briefs. Accordingly, Plaintiff's "Memorandum of Law Response to Defendants 2nd Motion to Dismiss as a Matter of Law and for Summary Judgment" [Court Doc. 35], is hereby **CONSTRUED** as a motion for leave to file a supplemental brief pursuant to Local Rule 7.1(d) and, because Plaintiff has not shown good cause for its need to file a surreply, such leave is hereby **DENIED**.

For the reasons explained below, Defendants' Motion for Summary Judgment and to Dismiss [Court Doc. 25] will be **GRANTED**.

## I.     LEGAL STANDARD

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment – and the Court to grant summary judgment – "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position by "citing to . . . materials in the record, including depositions, documents, . . . affidavits or declarations . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587

(1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc*., 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may bear this burden by either producing evidence that demonstrates the absence of a genuine issue of material fact, or by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. To refute such a showing, the nonmoving party may not simply rest on its pleadings. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); *see Anderson*, 477 U.S. at 249. The nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Anderson*, 477 U.S. at 254. Thus, if the plaintiff must ultimately prove his case at trial by a preponderance of the evidence, the Court must, on a motion for summary judgment, determine whether a jury could reasonably find by a preponderance of the evidence that the plaintiff's factual contentions are true. *See id.* If the

nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II. FACTUAL BACKGROUND

Viewing the facts contained in the record – to which Plaintiff has not contributed[1] – and all inferences that can be drawn therefrom in the light most favorable to Plaintiff, the relevant facts are as follows:

Plaintiff Cecil Barber is an African-American man who was employed with the Chattanooga Fire Department ("CFD") from July 8, 1980 until his retirement in August of 2008. (Court Doc. 31, Pl.'s Respon. 2.) In his Complaint, Plaintiff alleges a pattern of racially-animated discrimination, including a failure to promote, and harassment, (Court Doc. 1, Compl.), and his deposition testimony and Response clarify the scope of these claims significantly. Plaintiff's responses to questions about his claims indicate he is

---

[1] Plaintiff has not submitted any evidence in this case, in support of his Response or otherwise. He submitted an "affidavit" [Court Doc. 32], but it is unsworn and does not deal with the merits of this action. Plaintiff cites several newspaper articles in his response (Pl.'s Respon. at 7-10) but did not attach copies. Even if he had, the Court likely would not have considered them, as articles are generally inadmissible hearsay and not competent summary judgment evidence. *See, e.g.*, *Gailor v. Armstrong*, 187 F. Supp. 2d 729, 734 (W.D. Ky. 2001) ("Plaintiff also relies on articles from the Louisville Courier Journal to support the lack of an adequate use of force policy. Such articles are inadmissable hearsay. The Court sees no basis for considering them in summary judgment proceedings.") (citing Fed. R. Civ. P. 56(c); *Tinsley v. General Motors Corp.*, 227 F.3d 700, 703 (6th Cir. 2000)); *James v. Texas Collin Cnty.*, 535 F.3d 365, 374 (5th Cir. 2008) ("Newspaper articles, however, are not proper summary judgment evidence to prove the truth of the facts that they report because they are inadmissible hearsay.") (citations omitted). Finally, Plaintiff says he satisfied his evidentiary burdens "through the City's own evidence presented in defense of Plaintiff's complaint" (Pl.'s Respon. at 14) and even cites to Defendants' exhibits in support of his arguments (Pl.'s Respon. at 9) ("This information is taken from Exhibit 3, Document 26-3, page 1 of 2, of the Plaintiff Affidavit submitted by the City.")

claiming both discrimination based on a failure to promote and harassment that created a hostile work environment and that these claims are based on two events: the January 2006 Fire Marshal vacancy and an April 2007 disciplinary action. (Court Doc. 25-1, Barber Dep. 4:21-6:11, 27:21-29:7, & Ex. 1, CFD Summ. Report; Compl. 2-3; Pl.'s Respon. 6, 12.)

## A. Failure to Promote – The January 2006 Fire Marshal Vacancy

The Chattanooga City Code establishes a "bureau of fire prevention" within the fire department and specifies that "[t]he mayor shall designate an officer or member of the fire department as chief of the bureau of fire prevention, who shall hold his office at the pleasure of the mayor." (Court Doc. 26-1, Ex. 2 to the Littlefield Aff., Chattanooga City Code § 17-17.) The parties refer to the chief of the bureau of fire prevention as the Fire Marshal. (Pl.'s Respon. at 6; City Code § 17-3(3); Court Doc. 27, Rowe Aff. ¶ 2; Court Doc. 26, Littlefield Aff. ¶ 2.) The Fire Marshal position was open for appointment in January 2006 after the former Fire Marshal, Tony Quarles, retired. (Rowe Aff. ¶ 2; Littlefield Aff. ¶ 2.) Six firefighters – James Adams, Freddie Brooks, David Brooks, Craig Haney, Lisa Roberson, and Plaintiff – applied for the position. (Littlefield Aff. ¶¶ 2-3.) Plaintiff, D. Brooks, Roberson and Haney worked in the Fire Marshal's office in January 2006, while F. Brooks was working in a fire station and Adams was Chief of Training. (*Id.* at ¶ 4.)

Plaintiff began his employment with the CFD in 1980, and Mr. Haney began his in 1987. (Littlefield Aff., Ex. 2 Barber Resume & Ex. 3 Haney Resume.) Both Plaintiff and Mr. Haney list several certifications and additional training, although Mr. Haney lists many more items in each of these categories than Plaintiff and identifies them in more detail. (*Id.*) Both Plaintiff and Mr. Haney worked in the Fire Marshal's office in January 2006, although Plaintiff began that assignment in August 1992, while Mr. Haney began his assignment

there in December 2000. (*Id.*) All the applicants met the minimum qualifications, but Mayor Littlefield considered Craig Haney "to be the best and most qualified applicant" and appointed him to the Fire Marshal position, effective January 6, 2006. (*Id.* ¶¶ 4-6.) Mayor Littlefield did not consider any applicant's race in appointing Haney as Fire Marshal. (*Id.* ¶ 7) As the City Code vests the authority to appoint the Fire Marshal exclusively in the mayor, Chief Rowe did not participate in the selection of Haney for the Fire Marshal position. (Rowe Aff. ¶ 2.)

**B.    Hostile Work Environment and Harassment – 2007 Disciplinary Incident**

According to Plaintiff, he had a discussion with another firefighter, Ms. Pastusic (now Thorne), about how a fire drill was going to be conducted. In the course of the discussion, he believed she was insubordinate and attempted to reprimand her, including ordering her to take two days off from work. (Barber Dep. 28:4-29:7; 41:5-46:10.) Although the timing is unclear, Ms. Pastusic was reassigned to work under a different supervisor for a period of time, and Plaintiff's recommendation was not implemented. (*Id.*)

After this discussion and attempted reprimand, Ms. Pastusic filed a harassment complaint against Plaintiff and Chief Haney alleging a hostile work environment; the complaint was later withdrawn. (*Id.* at 28:24-29:7.) In response to Ms. Pastusic's complaint, Chief Rowe initiated an investigation and interviewed the parties involved. (*Id.* at 45:14-46:1). As a result of this investigation, on April 17, 2007, Plaintiff was reprimanded in writing for:

> [V]iolation of the Chattanooga Fire Department Standard Operating Procedures section 2.5.31, which states the following: "Members shall not use obscene, uncivil, or boisterous language at fires, in quarters, or at anytime in the

presence of the public. Engagement in altercations or fighting under any circumstances is prohibited." This action occurred April 9, 2007. Also, violation of S.O.P. section 3.4.02 (n) and Chattanooga City Code section 2-176 (b) (3), which states the following: Disciplinary action up to and including dismissal may be taken for any just cause including, but not limited to, inefficiency or negligence in the performance of one's duties; by not insuring that another inspector took on call duty during your absence April 11-15, 2007.

(CFD Summ. Report.)

Plaintiff asserts that he filed a complaint with the EEOC on July 7, 2007, Charge No. 494-2007-02330. (Pl.'s Respon. at 3) Plaintiff was aware of the City's anti-harassment procedures (Barber Dep., Ex. 6 Harassment Policy) but did not notify any city officials in accordance with them as "a safeguard." (Barber Dep. 31:2-32:17.) A July 20, 2007 letter from the EEOC to Chief Rowe requests information relating to EEOC Charge No. 494-2007-02330 for the relevant period of January 1, 2006 - July 1, 2007. (Rowe Aff., Ex. 1 Ltr. from D. Walker to W. Rowe.) The precise subject of the charge is unclear, as Plaintiff has not submitted his right-to-sue letter and as Defendants did not submit the charge enclosed in the EEOC letter. At his deposition, Plaintiff said this charge related just to the Pastusic incident, but the time frame the EEOC identified as "relevant" seems to indicate the charge included events related to the Fire Marshal vacancy. (Barber Dep. 46:2-7; Compl. at 4.)

Plaintiff retired from the CFD around August 15, 2008. (Barber Dep. 4:9-15.) Plaintiff's retirement was voluntary – based upon his reaching 28 years of service with the CFD – and not related to the allegations in his Complaint. (Barber Dep. 4:9-20.) Plaintiff then filed the instant action on December 29, 2008. This matter is now ripe for review.

III.    ANALYSIS

A. Claims Not At Issue

First, it is important to note the scope of the claims *not* at issue in this case. In his Complaint, Plaintiff charges that Defendants violated Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e) and 42 U.S.C. §§ 1981 and 1983. At no time during this case has Plaintiff asserted a state law claim nor indicated that he ever filed any charges with the Tennessee Human Rights Commission pursuant to the Tennessee Human Rights Act, the state law governing racial discrimination in employment.

In his Complaint, Plaintiff also asserts a "malicious harassment" claim (Compl. at 3-4), but seems to be confusing the "harassment" involved in a hostile work environment claim with a malicious harassment claim brought pursuant to Tenn. Code Ann. § 4-21-701. The latter requires "that a person acted maliciously, i.e., ill-will, hatred or spite [and] that a person unlawfully intimidated another from the free exercise or enjoyment of a constitutional right by injuring or threatening to injure or coercing another person or by damaging, destroying or defacing any real or personal property of another person." *Washington v. Robertson Cnty.*, 29 S.W.3d 466, 473 (Tenn. 2000). As Plaintiff alleged neither bodily injury nor destruction of property, or threats of the same, the Court construes his use of "malicious harassment" as relating to the hostile work environment claim and not as alleging the commission of a hate crime.

In his Complaint, Plaintiff claims only discrimination based on his race, but in his deposition and Response, he focuses much more on his support of Ann Coulter, Mayor Littlefield's opponent in the mayoral race, as the source of the discrimination and

harassment. (Pl.'s Respon. at 4, 9-10, 16, 25.) Plaintiff has never asserted any claims other than those premised on employment discrimination on the basis of his race, and Plaintiff did not even mention this political speech-motivation for Defendants' actions until his Response.[2] This bare allegation, without any evidentiary support and asserted for the first time in a response to a motion for summary judgment, is insufficient to introduce First Amendment claims into this case and thus they are not at issue.

Finally, Plaintiff makes two vague references to retaliatory behavior by Defendants: "[s]aid investigation . . . was conducted for the an illegal purpose, i.e. to harass the plaintiff, to retaliate against the plaintiff for past complaints of discrimination, to interfere with plaintiff potential suit against defendant(s)" (Compl. at 2) and "Plaintiff has reported the incidents of harassment, discrimination and retaliation to his supervisors . . . however no satisfactory action was taken to prevent the continuous discrimination, the unfair employment practices, the retaliation, or the harassment" (Compl. at 4). Plaintiff clarified in his deposition, however, that the only incident of "harassment, discrimination, and retaliation" was the Pastusic incident.(Barber Dep. at 45:9-46:7) Plaintiff also testified that he did not notify Defendants of the discrimination he felt he was experiencing before filing the EEOC complaint and has not alleged any discriminatory or retaliatory behavior other than the Pastusic incident, which occurred before the EEOC complaint was filed. (*Id.* at 31:6-33:2.)

---

[2] Even the possibility of a First Amendment Claim for violations of political speech rights was raised only in passing in one paragraph of Plaintiff's 31 page (unsworn) Response. (Respon. at 16: "With its promotion of Craig Haney above Plaintiff with the Fire Marshal's position, the City Government demonstrated that only persons who supported the Mayor during his run off bid with Ann Coulter could be considered for promotion. This suggest a violation of the free speech rights guaranteed by the First Amendment and the life, liberty, and fairness of the Fourteenth Amendment. Though the Boswell case dealt with the issue of opening an individuals mail without consent, it outline the parameters to be followed for issues of fairness and free speech protections on questions of constitutional equality and potential violations of those protections. In the present case, Plaintiff exercised his free speech by supporting someone other than the Mayor, and such political free speech exercise is protected by the First Amendment.")

Plaintiff's limited allegations of "retaliation" in the Complaint make sense only in light of his Response, where he complains repeatedly of being retaliated against because of his support of Mayor Littlefield's political opponent. (*See, e.g.*, Respon. at 10-11 ("A Prima Facia case for Retaliation, in accordance with the Title VII violation for Discrimination can be properly inferred from actions and language of Littlefield and Rowe. Since littlefield was the leader in this Retaliation and the highest ranking member of the City Government at the time, the retaliation can be properly inferred to have been continuous, pervasive and discriminatory. These acts were not isolated but part of a continuous pattern of discrimination designed to punish Coulter supporters and members of the I.A.P.B.F.F. for not following the politics of the LA. F. F. by both Rowe and Littlefield.")) As noted above, Plaintiff has not made any First Amendment claims, did not make any complaints of discrimination other than the Pastusic incident, and does not allege any discrimination after the Pastusic incident and thus no discrimination after he filed his complaint with the EEOC. Therefore, by definition, Plaintiff's use of the word "retaliation" in his Complaint cannot relate to a claim of retaliation for exercising his rights under 42 U.S.C. §§ 1981, 1983, or 2000e, and thus any "retaliation" claims are not at issue.

During his deposition, Defendants' counsel repeatedly questioned Plaintiff as to the scope of his race-based allegations, and he repeatedly confirmed these incidents were the sole bases for his claims.[3] Although in his Complaint and Response, he repeatedly refers

---

[3] Barber dep. at 5:21-6:11 ("Q. And when you say 'discrimination,' what would .. that relate to? A. I guess based on the fact that, during the time before the promotion, that I felt that I discriminated by the fire chief. . . . Q. So when you talk about discrimination, you mean discrimination in connection to the issue of failure to promote? A. Yes."); at 22:7-10 ("Q. Well, but what -- when you talk about harassment, I mean, do you think that the issue about the inspections was raised because of your race being black? A. No. Not about inspections I don't."); at 27:21-28:20 (After discussing the 2007 disciplinary incident "Q. Are there any other acts, actions, words, comments, that occurred that you feel is the basis for your working in a hostile work

to an "ongoing pattern of discrimination" as evidence for its continuing nature and timeframe, he only refers to the 2006 failure to promote and the 2007 disciplinary matter as an example of any discrimination or harassment. (Pl.'s Respon. at 11-12.) Whenever he discusses the discrimination occurring at any other time or over a period of time, it is always relates to the period after Mayor Littlefield's election and before the 2007 disciplinary incident.[4] Therefore, to the extent that a time period is relevant, it starts with Mayor Littlefield's election in 2005 and runs through the April 2007 disciplinary incident.

## B.    Defendants' Late Assertion of Affirmative Defenses

Defendants' cursory responses to Plaintiff's assertions, in particular Defendants' answer [Court Doc. 7], further complicated this case. In their Answer, Defendants asserted no affirmative defenses and admitted the allegation that "Plaintiff has duly complied with the requirements of Title VII, and has requested a right to sue from the EEOC, which will be provided upon receipt, and has otherwise performed all conditions precedent to the maintenance of this action." (Answer ¶ 7.) Now Defendants move to dismiss on the basis that Barber's claims are time-barred. (Court Doc. 28, Defs.' Mem. of Law in Supp. of Mot. Summ. J. ("Mem. in Supp.") 3-4.)

---

environment? A. That's probably it."); at 46:2-7 ("Q. So this paragraph in your complaint that begins with 'the plaintiff has reported' and ends with 'that the City has taken no action to prevent the continuous discrimination', this all relates to the Pastusic incident? A. Yes, sir.") He did assert at one point that "maybe" J.B. Moore contributed to a hostile work environment because of Moore's statements at a union meeting about Plaintiff's lack of qualifications for the Fire Marshal position, but this alleged harassment occurred at the time of and in relation to the January 2006 Fire Marshal vacancy. (*Id.* at 36:17-39:13)

[4] Pl.'s Respon. at 11-12 ("After the election of Mayor Littlefield the Plaintiff Disparate treatment started at the hands of the Mayor and Chief Wendell Rowe. With these two Defendants being at the top of the Chattanooga Fire Departments chain of command that disparate treatment was reflected throughout the Chattanooga Fire Department where the Plaintiff when acting as the City's Fire Marshal, had a white female refuse to follow his instructions. When the matter was taken before a superior Fire Department member, the Plaintiff found that he had no support for his legally given directives and initially the female Fire Fighters insubordination was disregarded and supported through a lack of punishment.")

The argument that an action is barred by laches or a statute of limitations is an affirmative defense, and Fed. R. Civ. P. 8(c) provides that "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." Further, compliance with the EEOC deadlines and procedures is a condition precedent, *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000), and Fed. R. Civ. P. 9(c) makes clear that: "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity."

In this case, Plaintiff clearly satisfied his burden in relation to pleading these issues. (Compl. at 3 ("Plaintiff bas duly complied with the requirements of Title VII, and has requested a right to sue from the EEOC. which will be provided upon receipt, and has otherwise performed all conditions precedent to the maintenance of this action.")) Defendant not only did not deny Plaintiff's assertion with particularity, but actually admitted that particular allegation. (Answer at ¶ 7.) Defendant did not assert any affirmative defenses in its Answer and has not moved to amend its answer in the 18 months since it was filed.

The United States Court of Appeals for the Sixth Circuit has noted that:

> Failure to plead an affirmative defense in the first responsive pleading to a complaint generally results in a waiver of that defense. With respect to the affirmative defense that a plaintiff's claim is barred by the statute of limitations, "[i]t is of no importance that a party and/or his counsel were unaware of a possible statute of limitations defense."

*Horton v. Potter*, 369 F.3d 906, 911-12(6th Cir. 2004) (internal citations omitted) The Sixth Circuit has also noted, however, that "[i]t is well established, however, that failure to raise

an affirmative defense by responsive pleading does not always result in waiver," *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993), in part because "as a practical matter there are numerous exceptions to this broad rule, the most significant for our case being the rule allowing amendments to the answer under Fed. R. Civ. P. 15(a)," *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). The Sixth Circuit has repeatedly allowed affirmative defenses to be raised in motions for summary judgment, where there is no prejudice to nonmovant or nonmovant does not object. *See, e.g. Stupak-Thrall v. Glickman*, 346 F.3d 579, 585 (6th Cir. 2003); *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997). Therefore, because the substance of Plaintiff's allegation could be fairly read to be limited to the requirement of obtaining a right-to-sue letter and not that all Title VII claims were timely made; because the Court reminded Plaintiff to respond to Defendants' motion and allowed Plaintiff additional time to do so; and because Plaintiff did not object to Defendants' raising this argument at a late date, the affirmative defense is not waived due to untimely filing.

But, as the Sixth Circuit also noted "[t]he Supreme Court has held that the purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it." *Moore, Owen, Thomas & Co.*, 99 F.2d at 1445. In this case, Defendants' actual argument related to untimely filing and failure to exhaust discussed only the failure to promote claim in any detail. (Mem. in Supp. at 3-4.) Defendants failed to address the charge that was filed in 2007 and include only a perfunctory single sentence that "Barber's alleged harassment claim based on a hostile work environment and additional federal statutory claims are likewise time barred," followed by a citation to a case that does not

address any substantive distinction. Plaintiff could not reasonably be expected to respond to the untimeliness argument with respect to the harassment claims. Further, Defendants admitted Plaintiff's assertion that he had obtained a right-to-sue letter and did not make any argument that Plaintiff did not timely file this suit in relation to that letter. Therefore, any affirmative defense as to failure to obtain a right to sue letter or untimeliness on the harassment claim has not been properly asserted and thus is waived.

C.     **Failure to Promote Claim**

Plaintiff's failure to promote claim is time-barred. Plaintiff's failure to promote claim arose on January 6, 2006, the effective date of Craig Haney's promotion to the Fire Marshal vacancy by Mayor Littlefield's. 42 U.S.C. § 2000e-(5)(e)(1) requires a charge to be filed within 180 days after the alleged unlawful employment practice or, if Plaintiff instituted proceedings with a State agency with authority to seek relief from such practice within 300 days after receiving notice that the State agency has terminated the proceedings. 42 U.S.C. § 2000e-5(e)(1). Since Plaintiff has not alleged, and the evidence does not show, that he filed a proceeding with the Tennessee Human Rights Commission (the State agency charged with handling employment discrimination claims), he is subject to the shorter 180 day deadline. *See El-Zabet v. Nissan N. Am., Inc.*, 211 F. App'x 460, 463 (6th Cir. 2006) ("[w]hile Tennessee has a state system of administrative remedies qualified to provide relief under Section 2000e-5(e)(1) . . . nothing in the record indicates that El-Zabet instituted proceedings with a state or local agency. Therefore, the 180-day time limit applies.") Therefore, Plaintiff had until July 5, 2006 to file a complaint with the EEOC against the CFD regarding the alleged discrimination in the filling of the Fire Marshal vacancy. Plaintiff did not file a charge with the EEOC by that date; even if he included the

failure to promote claim in his July 7, 2007 EEOC complaint, that claim would have been untimely.

Plaintiff is incorrect in asserting that the "continuing violations" doctrine saves his failure to promote claim. Failure to promote claims are "discrete acts of discrimination" not subject to the continuing violations doctrine. *See, Hunter v. Secretary of U.S. Army*, 565 F.3d 986, 993 -94 (6th Cir. 2009) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002)); *El-Zabet*, 211 F. App'x at 463. Although the Sixth Circuit has recognized that "the continuing-violations theory still applies to discrete discriminatory acts that are part of a 'longstanding and demonstrable policy of discrimination,'" *Austion v. City of Clarksville*, 244 F. App'x 639, 647 (6th Cir. 2007) (citing *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir.2003)), Plaintiff has not even alleged such a policy, let alone presented competent proof demonstrating one. Finally, although the Sixth Circuit has not decided whether the continuing violations doctrine was altered by the passage of the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, § 2, 123 Stat. 5 (2009), the Courts of Appeals that have addressed the issue have held uniformly that the FPA does not apply to failure to promote claims. *See, Noel v. The Boeing Co*. 622 F.3d 266 (3d Cir. 2010); *Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 375 (D.C. Cir .2010); and *Tillman v. S. Wood Preserving of Hattiesburg, Inc.*, 377 F. App'x 346, 349-50 (5th Cir. 2010).

Therefore, Plaintiff has failed to exhaust his administrative remedies and Defendants' Motion for Summary Judgment and to Dismiss will be **GRANTED** as to all Defendants on the failure to promote claim.

**D.     Hostile Work Environment Claim**

As noted above, Defendants have waived any affirmative defenses as to timeliness or failure to exhaust administrative remedies on the Hostile Work Environment claim.

The Sixth Circuit has noted that "to defeat a motion for summary judgment in a discrimination case, a plaintiff must adduce direct or circumstantial evidence of discrimination." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009) (citing *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir.2004)). As none of the direct evidence in the case, all of which was provided by Defendants, shows any evidence of discrimination, Plaintiff must rely on circumstantial evidence to make a prima facie case of a racially hostile work environment. Pursuant to the *McDonnell Douglas* burden-shifting framework applicable to cases without direct evidence, Plaintiff must demonstrate that: (1) he was a member of a protected class; (2) he was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable." *Barret*, 556 F.3d at 515 (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)). Plaintiff has satisfied only the first prong of that test, by asserting that he is African American and thus a member of a protected class.

The Sixth Circuit has noted that "it is axiomatic that [the Plaintiff] must provide a causal nexus between his race and the complained-of conduct," *Jordan v. City of Cleveland*, 464 F.3d 584, 596 (6th Cir. 2006), but Plaintiff has not only failed to show any evidence of harassment based on race, Plaintiff's own arguments and testimony point to another animating factor for what he perceived to be harassment. As evidence of race-

based harassment, Plaintiff offers only his unsupported allegations that (1) a less senior, non-minority individual was promoted over him for the Fire Marshal vacancy and his feeling, as expressed through his deposition testimony; and (2) the comments of J.B. Moore in connection with his qualification to be the Fire Marshal were "maybe" based on race. Even with regard to the Pastusic incident, which seems to have triggered Plaintiff's EEOC filing, Plaintiff simply argues that it created a hostile work environment because it was part of a lack of respect; he never even alleges a racial bias to her comments or treatment of him, let alone provides proof of that being the case.

As noted above, "[t[he failure to promote an employee . . . is a discrete act that cannot alone amount to a hostile work environment," *Hunter*, 565 at 994. Plaintiff has offered no proof of a longstanding policy of discrimination to bring the failure to promote within the hostile work environment claim, and his other allegations of racial bias are more accurately characterized, by his own testimony, to be political speech issues. Further, Defendants provide competent summary judgment evidence that race played no role in the promotion process, including Mayor Littlefield's sworn affidavit that he considered Haney to be more qualified and that he did not consider race and the resumes of Haney and Plaintiff, wherein Haney lists many more certifications and additional training, all identified in more detail, than Plaintiff and identifies them in more detail. (Littlefield Aff., Ex. 2 Barber Resume & Ex. 3 Haney Resume.)

As to Mr. Moore's objections to Plaintiff, Plaintiff's own testimony is that those objections dealt solely with Plaintiff's qualifications. (Barber Dep. at 37:10-39:8.) Even Plaintiff did not allege any explicit racial content to his statements, let alone harassment. (*Id*. at 37:10-21: "Q. Did he ever tell you that -- did Mr. Moore ever tell you that he thought

that you weren't performing up to the standards of other fire marshals because you were black? A. Not in those exact words. Q. What -- how did -- did he make you think that he thought that you weren't performing because you were black? A. Mainly because of my experiences in that particular job. The time that I had been there, as far as where I sit as far as the supervisor, and that's pretty much it.")

Finally, Plaintiff's own allegations undercut his argument of racial animus. Although Plaintiff maintains generally that the harassment he suffered was the result of racial discrimination, in his deposition testimony and Response, it seems clear that he believes (and focuses on) that he was discriminated against both in the failure to promote and harassed because of his political speech, not his race.[5]

Plaintiff's complaints about the Pastusic incident, aside from lacking any indication of racial animus, do not rise to the level of harassment, let alone to a claim that could survive summary judgment. A plaintiff's subjective belief that his work environment is hostile "does not provide any evidence of an objectively hostile work environment, a showing which is required to trigger Title VII liability." *McKethan-Jones v. Ohio Dept. of Health*, 7 F. App'x 475, 483 (6th Cir. 2001). Further, where "most of [a supervisor's] actions involved mere work-related criticisms and heightened performance expectations . . . [and]

---

[5] *See, e.g.*, Barber Dep. at 14:20-21 ("Pretty much, I think it was because of a political – it was political, that's what I want to say"); at 32:25-33:2: ("He had a lot of negative talk, you know, concerning myself In that position. It was all based on political"); and at 35:6-11 ("Q. And that was the conversation where Chief Rowe was explaining to you why he thought maybe you should not have been promoted to the fire marshal's position and that was based on your feeling that it was for political reasons? A. Yes, sir."). *See also*, Respon. at 9 ("Plaintiff . . . felt that his application and discussions with Mayor Littlefield, and Chief Rowe at that time were hostile due to his work with the Coulter campaign"), at 11 ("establish the elements necessary for a Hostile Work Environment because as leaders each made their intentions known to not promote I.A.P.B.F.F. members and as proof, Craig Haney and others from the I.A.F.F. were rewarded with promotions and Pay raises for their support of the Mayors election Campaign"); and at 16 ("With its promotion of Craig Haney above Plaintiff with the Fire Marshal's position, the City Government demonstrated that only persons who supported the Mayor during his run off bid with Ann Coulter could be considered for promotion.")

were neither physically invasive nor racially suggestive, no reasonable jury could conclude that [Plaintiff] was subject to an 'intimidating, hostile, or offensive' environment." *Hill v. Nicholson*, 383 F. App'x 503, 511 (6th Cir. 2010) (citing *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 352 (6th Cir.2005)). In this case, the CFD Summary Report reveals no evidence of racial bias in Chief Rowe's investigation – which itself was mandated by CFD policies after Ms. Pastusic lodged her sexual harassment complaint – or Chief's Haney's discipline of Plaintiff and instead cites to particular work behaviors of Plaintiff that violated CFD policies.

Finally, Plaintiff fails to show employer liability because he failed to avail himself of the City of Chattanooga's own harassment complaint procedures. Here, Plaintiff attempts to impose liability on his employer by alleging that his supervisors' failure to act upon his suggested reprimand of Ms. Pastusic and the investigation and reprimand of himself created the hostile work environment. An employer is entitled to an affirmative defense, however, where it can show "(1) that it exercised reasonable care to prevent and correct harassing behavior and (2) that [Plaintiff] unreasonably failed to take advantage of available opportunities to avoid harm. Generally, an employer satisfies the first part of this two-part standard when it has promulgated and enforced a [ ] harassment policy." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 275 (6th Cir. 2009). In this case, Defendants have provided a copy of the City of Chattanooga's detailed harassment policy. (Barber Dep., Ex. 6 Harassment Policy.) Plaintiff asserts he did not notify any city officials in accordance with them as "a safeguard," (Barber Dep. 31:2-32:17), but does not provide any evidence that "he was under a credible threat of retaliation." *Gallagher*, 567 F.3d at 276. Therefore, Plaintiff has failed to demonstrate employer liability.

Plaintiff has not presented any competent proof that: (1) there was any racial animus related to the complained-of incidents; (2) that the "harassment" of which he complains rises to the level of creating a "hostile work environment"; and (3) that the employer is liable, Plaintiff has failed to exhaust his administrative remedies and Defendants' Motion for Summary Judgment and to Dismiss will be **GRANTED** as to all Defendants on the hostile work environment claim.

### E.    Section 1981 and Section 1983 Claims

Plaintiff's Section 1983 claims are time-barred as to all Defendants. "[T]he duration of the statute of limitations for § 1983 actions is governed by state law; however, federal standards govern when the statute begins to run. . . . Tennessee law provides for a one year statute of limitations for § 1983 actions." *Sharpe*, 319 F.3d at 266 (6th Cir. 2003). As Plaintiff retired from the CFD in August of 2008, he had until August of 2009 to file any claims pursuant to § 1983. As he did not file this case until December of 2009, his § 1983 claims are barred by the statute of limitations.

As the statute of limitations for § 1981 claims is four years, *Hughes v. General Motors Corp.*, 212 F. App'x 497, 499 (6th Cir. 2007), those claims are not time-barred. They are, however, analyzed under the same *McDonnell Douglas* framework as the Title VII claims, where there is no direct evidence of discrimination. *Id.* at 502. As explained above, Plaintiff fails to make the requisite showing on the hostile work environment claim. Given that Defendants' evidence shows that all of the applicants met the "minimum qualifications," (Littlefield Aff. ¶ 4), Plaintiff has made a *prima facie* case of discrimination as to the failure to promote claim, in that he has shown that (1) he is a member of a

protected class; (2) he applied for and was qualified for a promotion; (3) he was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied.

Since Plaintiff established this prima facie case, Defendants must now "offer evidence of a legitimate, non-discriminatory reason for the adverse employment action." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). Defendants have done so, by offering Mayor Littlefield's affidavit, in which he swears he did not consider the applicants' races and in which he swears he considered Haney "to be the best and most qualified applicant for the Fire Marshal's position." (Littlefield Aff. ¶¶ 6-7.) They also provided other evidence – the resumes of Plaintiff and Haney – as additional corroborating support for this assertion, and those resumes show (as discussed above) that Haney lists many more certifications and additional training, all identified in more detail, than Plaintiff and identifies them in more detail. (Littlefield Aff., Ex. 2 Barber Resume & Ex. 3 Haney Resume.)

As Defendants have offered a legitimate, non-discriminatory reason for their action, "the burden shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but merely a pretext for discrimination." *White*, 533 F.3d at 391-92. Plaintiff does not offer any competent summary judgment evidence to contradict Defendants' showing. Plaintiff's primary rebuttal is his assertion that Haney was not more qualified, but he does not provide any evidence beyond his bare, conclusory assertions as to their relative qualifications.

Plaintiff also relies upon the contrast between the previous methods of selection and

the one Mayor Littlefield allegedly used (leaving the position vacant to encourage Haney to apply). Plaintiff based his knowledge of these previous methods on newspaper articles. The titles of the articles alone do not always reveal the support the points for which Plaintiff cites them. (*See, e.g.*, Respon. at 7: "Those established Standards included, Seniority and Time in Service, Experience as a Supervisor, Certifications in Fire Related Disciplines, and true open promotional procedures (Ginny LaRoe, Coppinger leaves legacy of diversity, enhanced services, CTFP, 10-29-2005, at, p B1.)"; and at 9-10: "The Fire Marshals position was deliberately left vacant (Ginny LaRoe, Candidates under review to fill city's fire marshal vacancy, CTFP, 12-22-2005, at pA1.) for a number of months until Haney could officially apply.") Even if they did, however, (1) Plaintiff has not attached copies for the Court to confirm that they support his position, and (2) even if the Court had copies, newspaper articles are not competent summary judgement evidence when offered for the truth of the matters asserted therein. Therefore, Plaintiff has failed to show Defendants' proffered explanation for its failure to promote him was mere pretext, and his § 1981 claim must fail as to all Defendants.

Because Plaintiff's § 1983 claim was not filed timely; because Plaintiff failed to make a *prima facie* case of discrimination on the hostile work environment claim pursuant to § 1981; and because Plaintiff has failed to present any competent proof that Defendants' proffered explanation for its failure to promote him was mere pretext pursuant to §1981, Plaintiff's § 1981 and §1983 claims must fail as to all Defendants, and Defendants' Motion for Summary Judgment and to Dismiss will be **GRANTED** as to the §1981 and §1983 claims.

IV.     **CONCLUSION**

Accordingly, and for the reasons stated above, Defendants' Motion for Summary Judgment and to Dismiss [Court Doc. 25] is hereby **GRANTED** in its entirety.

A separate judgment will enter.


**SO ORDERED** this 1st day of April, 2011.


_____*/s/Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE